*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

        Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN and FARM BUREAU
MUTUAL INSURANCE COMPANY OF
MICHIGAN,

        Defendants-Appellees,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendant-Appellant,

and

UNNAMED ASSIGNEE OF THE MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

        Defendant.

UNPUBLISHED
July 21, 2026
3:02 PM

No. 371189
Wayne Circuit Court
LC No. 23-012338-NF

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

In this first-party no-fault priority dispute brought by plaintiff, VHS of Michigan, doing business as Detroit Medical Center, for reimbursement for services rendered to a minor child, IL, defendant, Michigan Automobile Insurance Placement Facility (MAIPF), appeals by leave

granted[1] the trial court order granting summary disposition to defendants, Farm Bureau General Insurance Company of Michigan and Farm Bureau Mutual Insurance Company of Michigan (collectively, Farm Bureau), and denying summary disposition to MAIPF.[2]  For the reasons that follow, we reverse the trial court order and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

This case arises from an accident involving an automobile and a pedestrian, IL.  In October 2022, IL was struck by a vehicle when she was crossing the street.  She was transported to a local hospital before being airlifted to Detroit Medical Center with life-threatening injuries.  Fortunately, IL was discharged within a few days.

At the time of the accident, IL lived with her grandmother, Audrey Lusby; her mother, Ashley Lusby; and her uncle, ML—another minor.  Ashley did not have a driver's license or a car.  However, Audrey had a no-fault auto insurance policy from Farm Bureau at the time of the accident.  As part of her policy, Audrey opted out of personal protection insurance (PIP) medical coverage.  She signed a PIP Coverage Form in July 2022, certifying that she had coverage under Medicare Parts A and B, and that any spouse or domestic partner and all resident relatives had qualified health coverage or were covered under another auto policy with PIP medical coverage.  She also filled out a Qualified Health Coverage Verification Form, which asked her to list every resident relative and whether they had qualified health coverage or a different PIP policy.  Audrey only listed herself.  After the accident, Ashley applied for PIP benefits through the Michigan Assigned Claims Plan (MACP) on IL's behalf, indicating that Farm Bureau had denied IL benefits.

Plaintiff filed suit against Farm Bureau and MAIPF, seeking reimbursement from Farm Bureau for the reasonable and necessary medical services plaintiff provided to IL.  In the alternative, if IL was not covered by any policy on the date of the collision, plaintiff sought reimbursement from MAIPF.  Farm Bureau and MAIPF both moved for summary disposition.  Farm Bureau argued that Audrey made an effective election to opt out of PIP medical coverage in her insurance policy and IL was not listed as a resident relative so she was not covered under the policy, therefore Farm Bureau had no liability to plaintiff.  MAIPF argued that IL could not recover from the MACP because she was covered under Audrey's policy, which excluded medical benefits, or, if Audrey's election was ineffective, Farm Bureau was still the highest in the order of priority.

The trial court granted Farm Bureau summary disposition, determining that Audrey made an effective election to opt out of medical expenses in her no-fault policy, which only applied to her, and IL was not covered by the Farm Bureau policy.  The court denied MAIPF summary

[1] *VHS of Mich, Inc v Farm Bureau Gen Ins Co of Mich*, unpublished order of the Court of Appeals, entered November 12, 2024 (Docket No. 371189).

[2] MAIPF never assigned the no-fault claims at issue to an insurer, so there is no unnamed assignee of the MAIPF defendant that participated in the lower court or on appeal.

disposition because, as IL was not covered under the Farm Bureau policy, IL could seek benefits from the MACP because she was a pedestrian at the time of the accident. MAIPF now appeals.

## II. STANDARDS OF REVIEW

We review de novo the trial court's ruling on a motion for summary disposition. *Hubbard v Stier*, 345 Mich App 620, 625; 9 NW3d 129 (2023). MAIPF moved for summary disposition under MCR 2.116(C)(8) and (10). Although the trial court did not specify under which subrule it denied MAIPF's motion, because the court considered documentary evidence outside the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Farm Bureau moved for summary disposition solely under MCL 2.116(C)(10).

A motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a plaintiff's claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), we consider the parties' documentary evidence "in the light most favorable to the party opposing the motion." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted). A (C)(10) motion is properly granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

Resolution of the issues on appeal requires statutory interpretation, and questions of statutory interpretation are also reviewed de novo. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024). When interpreting statutory language

> [t]he role of this Court. . . is to ascertain the legislative intent that may reasonably be inferred from the words in a statute. Clear and unambiguous statutory language must be applied as written. Proper statutory interpretation requires: (1) reading the statute as a whole, (2) reading its words and phrases in the context of the entire legislative scheme, (3) while considering both the plain meaning of the critical words and phrases along with their placement and purpose within the statutory scheme, and (4) interpreting the statutory provisions in harmony with the entire statutory scheme. [*Love v Rudolph*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369895); slip op at 9 (quotation marks and citations omitted).]

## III. ANALYSIS

The trial court erred when it determined that Audrey made an effective election to opt out of PIP coverage in her no-fault policy because her failure to list her resident relatives and provide proof of their qualifying health coverage rendered her election ineffective. As such, the trial court erred by granting Farm Bureau summary disposition and denying MAIPF summary disposition because, based on the ineffective election, the Farm Bureau policy provides unlimited PIP coverage to IL and plaintiff is entitled to recovery as her provider.

"The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Donner v Progressive Mich Ins Co*, 351 Mich App 398, 406; ___ NW3d ___ (2024) (quotation marks and citation omitted). "This includes PIP benefits. A person injured in an accident arising from the ownership, operation, or maintenance of a motor vehicle as a motor vehicle is immediately entitled to PIP benefits without the need to prove fault." *Id.* (quotation marks and citations omitted). "PIP benefits are mandated by statute under the no-fault act, [therefore] the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Bazzi v Sentinal Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018), citing *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993).

Relevant to the issues on appeal, under the 2019 amendments to the no-fault act, qualified individuals may opt out of coverage for PIP medical expenses. MCL 500.3107d provides, in relevant part:

> (1) For an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured may, in a way required under section 3107e and on a form approved by the director, elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a qualified person, and if the applicant's or named insured's spouse and any relative of either that resides in the same household have qualified health coverage or have coverage for benefits payable under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).
>
> (2) An applicant or named insured shall, when requesting issuance or renewal of a policy under subsection (1), provide to the insurer a document from the person that provides the qualified health coverage stating the names of all persons covered under the qualified health coverage. [MCL 500.3107d(1), (2).]

MCL 500.3107d(7) sets forth the conditions for eligibility to decline PIP coverage and defines the relevant terms:

> (7) As used in this section:
>
> * * *
>
> (b) "Qualified health coverage" means either of the following:
>
> (*i*) Other health or accident coverage to which both of the following apply:
>
> (A) The coverage does not exclude or limit coverage for injuries related to motor vehicle accidents.
>
> (B) Any annual deductible for the coverage is $6,000.00 or less per individual. . . .

(*ii*) Coverage under parts A and B of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395III.

(c) "Qualified person" means a person who has qualified health coverage under subdivision (b)(*ii*).

Additionally, MCL 500.3107d(5) provides that an "election under this section applies to the applicant or named insured, the applicant or named insured's spouse, a relative of either domiciled in the same household, and any other person who would have had a right to claim personal protection insurance benefits under the policy but for the election."

Read together, these statutory provisions allow a named insured to "decline PIP coverage for allowable expenses if the name insured is 'a qualified person,' meaning the named insured has health coverage under parts A and B of Medicare, *and* if household relatives also have the described required other coverage." *Love*, ___ Mich App at ___; slip op at 11, citing MCL 500.3107d(1), (7)(b)(*ii*), and (7)(c), and MCL 500.3107(1)(a).

In granting Farm Bureau's motion for summary disposition, the trial court reasoned that Audrey only listed herself as a household member, despite IL and the other relatives living in the home, and "therefore, there is no coverage, under the Farm Bureau policy" for IL. Further, in denying MAIPF's motion, the trial court noted plaintiff's argument that Audrey did not make an effective election because her resident relatives did not have qualified coverage. But the trial court concluded that there was a proper election as to Audrey. The trial court erred by determining that Audrey made an effective election to opt out in her insurance application.

Recently, in *Northland Radiology, Inc v Allstate Fire & Cas Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 374214); slip op at 1-2, this Court addressed the same issue that underlies this appeal, whether an insured had made an effective opt-out election. In *Northland Radiology*, ___ Mich App at ___; slip op at 2, Dwight Turner and his mother, Jacqueline Springer, were in an auto collision in which Turner sustained injuries, was treated by the plaintiff, and assigned his rights to the plaintiff. Turner did not have his own insurance policy and allegedly had healthcare coverage through Medicaid. *Id*. at ___; slip op at 2. Turner and Springer lived at the same address, and Springer had a no-fault policy from Allstate, but Turner was not listed on the policy as a named insured, licensed driver, or resident relative. *Id*. at ___; slip op at 2. When Springer renewed the policy, she opted out of PIP medical coverage under Option 6, certifying that she had coverage under Medicare Parts A and B and that all resident relatives had qualified health coverage or were covered by a different auto policy. *Id*. at ___; slip op at 2-3. She provided proof of her Medicare coverage, and the parties did not dispute that Turner's Medicaid coverage did not constitute qualified health coverage under MCL 500.3107d(7)(b). *Id*. at ___; slip op at 4. The plaintiff provider filed suit against Allstate seeking payment, and Allstate moved for summary disposition, arguing there was no PIP coverage available to Turner under Springer's policy. *Id*. at ___; slip op at 4. The trial court granted the motion, rejecting the plaintiff's argument that Turner's election was ineffective, and denied the plaintiff reconsideration. *Id*. at ___; slip op at 4.

On appeal, this Court concluded that Springer did not effectively opt out of PIP medical coverage and as such, the trial court erred by granting Allstate summary disposition. *Id*. at ___;

slip op at 5. The Court reiterated that the requirements to opt out of PIP medical coverage under MCL 500.3107d are:

> (1) the automobile insurance policy must have been issued or renewed after July 1, 2020; (2) the applicant or named insured must be a "qualified person," meaning they have health coverage under parts A and B of Medicare; (3) the applicant's or named insured's spouse and resident relatives must have "qualified health coverage" or be covered under another auto policy with PIP medical coverage; (4) the applicant or named insured must elect to not maintain PIP medical coverage, and that election must be made on an approved form; and (5) the applicant or named insured must provide the insurer evidence of qualified health coverage for all persons. [*Id*. at ___; slip op at 7.]

Although some of these criteria were met, Turner did not have other PIP coverage, and Springer only provided Allstate with documentation of her own qualified health coverage; therefore, Springer's election was ineffective. *Id*. at ___; slip op at 7. This Court reasoned, "[i]f an applicant or named insured could elect to opt out of PIP medical coverage without meeting all the criteria outlined in MCL 500.3107d, it would render those criteria meaningless," and because all the criteria were not met, Springer failed to make an effective opt-out election. *Id*. at ___; slip op at 7.

In the present case, Audrey made her election on July 14, 2022, i.e., after July 1, 2020. Audrey was a "qualified person" as she had healthcare coverage under Medicare Parts A and B. Audrey elected Option 6 on an approved form. Contrary to plaintiff's assertions, Farm Bureau's production of only the last page of the form, which provided Audrey's selection and signature, did not render the form improper. Thus, some of the requirements to make an effective opt-out election were met. See *id*. at ___; slip op at 7.

However, Audrey failed to establish that her resident relatives had qualified health coverage or were covered under another auto policy with PIP medical coverage or provide proof of such qualified health coverage. See *id*. at ___; slip op at 7. Audrey testified that Ashley did not have a driver's license or a car. Thus, there was no other no-fault policy that provided medical coverage for Ashley and IL, and the only way for Audrey to be eligible to make an effective opt out would be if Ashley, IL, and ML had qualified health coverage. MCL 500.3107d(1), (7). Audrey testified that as of the date of her election, her resident relatives had the following coverage: Ashley had Medicare and Medicaid, IL had Medicaid, and ML had Medicaid. Qualified health coverage is defined as other health or accident coverage or Medicare Parts A and B specifically. MCL 500.3107d(7)(b). Medicaid is not included within the definition of qualified health coverage. Thus, because the statute requires that the named insured and his or her resident relatives have qualified health coverage to opt out of allowable expenses in a no-fault policy, MCL 500.3107d(1), Audrey's election was ineffective because of the lack of qualified coverage of her resident relatives. Her failure to establish all the requirements to opt out rendered her election ineffective. See *Northland Radiology*, ___ Mich App at ___; slip op at 7. As such, the trial court erred in determining that Audrey made an effective election as to herself only and erred in granting Farm Bureau and denying MAIPF summary disposition in this regard.

Based on its determination that Audrey made an effective election to opt out of allowable expenses and IL had no coverage, the trial court denied MAIPF summary disposition because,

under MCL 500.3115, IL was entitled to recover benefits from the MACP because she was a pedestrian involved in the accident. MCL 500.3115 provides, "Except as provided in section 3114(1), a person who suffers accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits under the assigned claims plan under sections 3171 to 3175."

However, this Court in *Northland Radiology*, ___ Mich App at ___; slip op at 7, also concluded that "an ineffective opt-out is applicable to the applicant or named insured, their spouse, resident relatives, and any other person who may have a right to claim PIP benefits under the policy," because MCL 500.3107d(5) provides that an opt-out election applies to all of these people. "It may be reasonably inferred from [the language of MCL 500.3107d(5)] that the Legislature likewise intended that an applicant's or named insured's failure to make an effective election is applicable to all the same persons." *Id*. at ___; slip op at 8.

MCL 500.3107d(4) provides, "If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective election under subsection (1), the policy is considered to provide personal protection benefits under section 3107c(1)(d)." MCL 500.3107c(1)(d) provides that the coverage level has "[n]o limit for personal protection insurance benefits under section 3107(1)(a)." In *Northland Radiology*, ___ Mich App at ___; slip op at 8, this Court concluded that the plain and unambiguous language of MCL 500.3107d(4) made clear that the Legislature intended the unlimited PIP coverage to apply to the entire policy rather than select individuals, and had the Legislature intended to limit that application, it could have included such language. "The language chosen by the Legislature in MCL 500.3107d reflects its intent that a policy will provide unlimited PIP medical coverage if an applicant or named insured does not make an effective election to opt out of coverage." *Id*. at ___; slip op at 8-9. As such, this Court in *Northland Radiology* concluded that the trial court erred by granting Allstate summary disposition because the Allstate policy provided unlimited PIP medical coverage, and the matter was reversed and remanded. *Id*. at ___; slip op at 9.

Accordingly, following this Court's reasoning in *Northland Radiology*, the trial court erred by granting Farm Bureau summary disposition and denying MAIPF summary disposition because, based on Audrey's ineffective election, the Farm Bureau policy provided unlimited PIP medical benefits under MCL 500.3107d(4) and MCL 500.3107c(1)(d) to Audrey's resident relatives— including IL. As such, the trial court order granting Farm Bureau's motion and denying MAIPF's motion is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young

-7-